UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

MARGARITA ELISEA FREGOSO also known as MARGARITA FREGOSO, a divorced person,

Plaintiff,

v.

KEY BANK, National Association,

Defendant.

No.

**COMPLAINT**

DEMAND FOR JURY TRIAL

COME NOW the Plaintiff, MARGARITA ELISEA FREGOSO also known as MARGARITA FREGOSO, a divorced person, ("Plaintiff") by and through counsel, brings this action against Defendant KEY BANK, for damages, including those allowed under the Real Estate Settlement Procedures Act ("RESPA"), the Washington Consumer Protection Act ("CPA"), and other torts based on the Defendant's treatment of the home equity loan secured by Plaintiff's homestead. Plaintiff states the following allegations:

I.    PARTIES

1. Plaintiff owns and lives at the real property located at 1703 SW 347th Place, Federal Way, King County, Washington, further identified as:

Lot 20 in Rosella Lane as shown in the recorded plat/map thereof in 136-26 of King County Records, State of Washington

Tax ID 742800-0200A.

COMPLAINT - 1

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

2. Defendant Key Bank, National Association, ("Key Bank") is a subsidiary of KeyCorp., a regional bank headquartered in Cleveland, OH. Key Bank is the 24th on the list of largest banks in the United States. Key Bank loans and services residential mortgage loans, including Plaintiff's home equity loan secured by her homestead.

## II.   JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question), as well as supplemental jurisdiction for state law claims pursuant to 28 U.S.C. § 1367(a). The Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 because the Plaintiff and the Defendant Key Bank are citizens of different states, and the amount in dispute exceeds $75,000.

4. Plaintiff seeks declaratory relief as available pursuant to 28 U.S.C. §§2201 and 2202.

5. Venue is proper in this District under 28 U.S.C. §1391(b) because the Defendant conducts business affairs and transacts business in this District, the unlawful acts giving rise to this complaint occurred in this District, and the Plaintiff lives in this District.

## III.   FACTUAL ALLEGATIONS

6. Plaintiff and her then husband, Humberto Fregoso, obtained a line of credit from Key Bank in the amount of $100,000 in November 2007; this line of credit has variable interest rates ("the Loan"). The couple divorced in 2011 and Ms. Fregoso filed for Chapter 7 bankruptcy protection in 2011.[1] Ms. Fregoso continues to make payments on their mortgage as well as the home equity loan from Key Bank as she wanted to keep her home and protect her equity (Exhibit A, Deed of Trust).

7. During the pendency of the bankruptcy case, Key Bank stopped sending periodic statements to the Plaintiff even though she has been the person who makes all the payments. Plaintiff, at all times relevant, has been current in all payments due under the Loan.

---

[1] Humberto Fregoso signed a quit claim deed in favor of Margarita Fregoso pursuant to the dissolution agreements they reached.

COMPLAINT - 2

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

8. Unbeknown to Plaintiff, while the bankruptcy case was pending, Key Bank continued to accept Plaintiff's payments but applied most to interest, with little or nothing to be paid toward the principal. Furthermore, Key Bank did not send Plaintiff any notice whatever on the changes of interest rates. Due to Key Bank's failure to provide Plaintiff with the periodic statements on the Loan for months on end, she was unable to learn of the misapplication of her payments.

9. After the bankruptcy discharge, in December of 2012 Key Bank charged-off $21,731.58 from the principal balance of the Loan, reducing the principal amount due and owing on the Loan from $68,228.16 to $44,496.58. Plaintiff continues to make payments and expects Key Bank to timely and accurately apply all payments made by her toward this new and reduced principal amount (Exhibit B, Excerpt of Loan History showing charge off).

10. In 2020, without any notice to Plaintiff, Key Bank unilaterally added the charged-off amount back to the loan. By that time, Plaintiff had paid down the principal balance to $39,962.57. Key Bank's reinstatement of the charged off amount increased the loan balance from $39,962.57 to $63,694.15, by exactly $21,731.58. Key Bank's action caused for Plaintiff's payments to be insufficient and for the Loan to be in delinquent status (Exhibit C, Loan Statement showing reinstatement of charged off amount).

11. Additionally, Key Bank did not apply any payments that Plaintiff made between December 2020 and May 2021 and declared the account delinquent due to *seven months of no payments.* Ironically, even though Plaintiff informed Key Bank of her divorce and title transfer to her name, Key Bank sent late notices in the name of her ex-husband about the status of the account but did not provide any explanations or accounting or periodic statements explaining the purported default.

12. By the time Plaintiff knew about Key Bank's actions, the account was severely delinquent. Key Bank determined that the loan account had more than $1800 in arrearages and increased Plaintiff's monthly payment from under $200 to $800. Plaintiff expressed to

Key Bank that she made every one of these seven payments and had proof to provide but received no assistance from Key Bank to correct the accounting error.

13. For months, Plaintiff endured debt collection calls and written correspondence from Key Bank alleging that her loan was in default and without cure, would result in foreclosure. Key Bank's debt collection activities, which were based on its own errors, caused Plaintiff ongoing and severe distress over financial ruin and losing her home to foreclosure.

14. While calling and begging repeatedly for Key Bank to investigate and correct the error concerning the missing payments, including visiting her local branch who could not figure out what was going on with her account, Plaintiff was placed under the threat of foreclosure. As a result, Plaintiff made two payments every month, as well as late fees and penalties, between December of 2020, and January of 2021 to make up for the seven payments Key Bank claimed to have not received.

15. Upon receiving Plaintiff's payments, Key Bank verbally told her they would issue a refund or reimbursement of the over-payments. Even though Plaintiff paid the additional seven payments, to date, Key Bank has yet to refund Plaintiff anything.

16. Being an immigrant from Mexico, and having limited English-speaking ability, Plaintiff was unable, on her own, to convince Key Bank to review her payment history and rectify the situation. She had to hire the law firm of Barraza Law, PLLC, which issued the First Notice of Error pursuant to Regulation X of the Mortgage Servicing Act under the Real Estate Procedure Act on March 31, 2021. The Notice also referenced Washington RCW 31.04.290 as the basis for requiring Key Bank's response.

17. Key Bank did not acknowledge or respond to Plaintiff's First NOE dated March 31, 2021. As a result, Plaintiff counsel issued **a Second Notice of Error** on May 6, 2021, explaining how Key Bank charged off $21,731.58, and reinstated the same, and requesting for Key Bank to reverse the reinstatement and render the Loan to be of current status.

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

18. On June 22, 2021, Key Bank sent a letter addressed to Plaintiff's ex-husband, but mailed to her home address, which indicates simply, "[e]nclosed is the information requested." The information provided by Key Bank is 30 pages of "Current Loan History." While the document confirms the charge off action and the reinstatement of the charged off amount, it cannot be deciphered by the average consumer. Other than the Current Loan History, Key Bank provided no response or explanation whatsoever for the charge off action in 2012, and the reinstatement of the charged off amount in 2020.

19. Due to Key Bank's actions, the loan balance is higher now than it was in 2012 despite all timely payments and make up payments that Plaintiff has made. Plaintiff's payments have been largely consumed by accrued interest and late fees instead of being applied to pay down the loan.

20. Plaintiff's timely payments on the Loan have fallen into a black hole and are not accounted for by Key Bank. Plaintiff's earned equity, following the financial crisis, has been lost due to Key Bank's reinstatement of the charged off amount. The principal balance of the Loan, despite Plaintiff's timely payments for ten years, remains practically the same even though she has not drawn any more from the line of credit.

21. Key Bank's actions have caused Plaintiff to lose money, time, and other resources. The bank's actions have caused Plaintiff to suffer from ongoing and severe emotional distress over the fear of losing her home and the worry that her payments have not been properly applied. The bank's actions reflect its careless disregard for the rules of law and regulations applicable to it as a lending institution, as well as Plaintiff's status as a consumer who has rights.

### IV. CAUSES OF ACTION
### BREACH OF CONTRACT & IMPLIED DUTY OF
### GOOD FAITH & FAIR DEALING

22. Plaintiff incorporates by reference and restates as though fully set forth herein all factual allegations within paragraphs 1 through 22.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

23. There exists a contract between Key Bank and the Plaintiff as to how to her payments should be applied to the outstanding balance of the Loan. Paragraph 25 of the Deed of Trust specifies that if no advance payments had been made by Key Bank as the Lender, including attorneys' fees and legal expenses, in connection with the exercise of its rights or remedies described therein, the payments made by the Plaintiff will be applied to "the remaining Obligations." There is an implied duty of good faith and fair dealing under the Deed of Trust and Key Bank has breached the terms of the Deed of Trust as well as the implied duty of good faith and fair dealing.

24. Key Bank breached the Deed of Trust by failing to apply seven or more payments as made by Plaintiff to the balance of the Loan when it received them.

25. Key Bank breached the implied duty of good faith and fair dealing by unilaterally charging off $21,731.58 and adding it back onto the Loan after eight years without any explanations or justifications.

26. Key Bank's breach of contract and the implied duty of good faith and fair dealing have resulted not only in actual loss of money in the form of payments she has made but not applied, but also loss of equity, time and other resources that Plaintiff has expended in her effort to track the seven payments that she made, to make up for all of them, and to work with Key Bank and her counsel to get to the bottom of Key Bank's faulty accounting.

## VIOLATIONS OF RESPA

27. Plaintiff incorporates by reference and restates as though fully set forth herein all factual allegations within paragraphs 1 through 22.

28. Section 2605(e) of the Real Estate Settlement Procedures Act requires that servicers of federally related mortgage loans respond in a prescribed time and manner to written requests from borrowers. 12 U.S.C. § 2605(e). Regulation X is the implementing regulation. 12 C.F.R. § 1024.35 provides error resolution procedures which require the loan servicer to conduct a reasonable investigation of the asserted error. 12 C.F.R. § 1024.35(e)(1)(i)(B).

29. By its acts and omissions, Key Bank has violated RESPA with respect to the Loan, including, but in no way limited to, in the instances where the Plaintiff, through her counsel, inquired via NOE of its actions to charge off $21,731.58 from the Loan's principal, and adding it back on after eight years, without providing any explanations to her as the borrower. Further, Key Bank has violated RESPA, Reg. Z and 12 C.F.R. 1024.35(b)(6) by failing to send monthly period billing statements and interest rate changes, failing to adequately respond to Plaintiff's First Notice of Error within thirty business days, and failing to address the error specified by Plaintiff in her Second Notice of Error.

30. 12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

31. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

32. Key Bank failed to correct the identified errors or conduct a reasonable investigation into Plaintiff's complaint that it arbitrarily added back the charged off amount

after eight years without providing notice or explanation to Plaintiff before doing so. Plaintiff's First Notice of Error and Second Notice of Error each meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).

33. Plaintiff has alleged by and through her First and Second Notices of Error that Key Bank violated 12 C.F.R. §1024.35(b)(2) by failing to reasonably investigate identified errors, provide documentation requested, and failing to correct the servicing errors raised therein.

34. Key Bank's failure to properly respond to the Second Notice of Error exacerbated the emotional distress caused by the First Notice of Error.

35. Key Bank's actions constitute a pattern and practice of behavior in conscious disregard of the law and Plaintiff's rights.

**VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. §1601 ET SEQ.**

36. Plaintiff incorporates by reference and restates as though fully set forth herein all factual allegations within paragraphs 1 through 22.

37. Plaintiff asserts a private right of action under 15 U.S.C. § 1640(a) for: (i) Key Bank's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a and Reg. Z, 12 C.F.R. § 1026.20(c) and (d); (ii) Key Bank's breach of its duty to promptly credit payments pursuant to 15 U.S.C § 1639f and Reg. Z, 12 C.F.R. §1026.36(c)(1), and (iii) Key Bank's breach of its duty to send periodic mortgage statements pursuant to 15 U.S.C. §1638(f) and Reg. Z, 12 C.F.R. § 1026.41.

**Failure to Promptly Credit Payments**

38. 15 U.S.C. § 1639f (a) provides that, "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer."

39. Key Bank has failed to credit payments to the Loan as of the date of receipt and its delay has resulted in charges to Plaintiff including accrued interest and late fees. 12

COMPLAINT - 8

C.F.R. §1026.36(c)(1)(ii) provides that if a servicer retains a partial payment in a suspense or unapplied funds account (rather than credits or returns it), then the servicer must (1) disclose on the periodic statement the total amount retained in such suspense or unapplied funds account and (2) when sufficient funds accumulate to cover a full payment, promptly credit the retained funds to the oldest outstanding payment. Key Bank never explained to Plaintiff what it did with the seven payments she made.

40.  The Loan, at all times relevant, is current as Plaintiff has timely made every payment that was due. Yet Key Bank failed to acknowledge the receipt of certain payments or that the Loan is of current status.

**Failure to Send Payment Change and Interest Rate Notice**

41.  15 U.S.C.A. § 1638b states, "During the 1-month period that ends 6 months before the date on which the interest rate in effect during the introductory period of a hybrid adjustable rate mortgage adjusts or resets to a variable interest rate or, in the case of such an adjustment or resetting that occurs within the first 6 months after consummation of such loan, at consummation, the creditor or servicer of such loan shall provide a written notice, separate and distinct from all other correspondence to the consumer, that includes the following: (1) Any index or formula used in making adjustments to or resetting the interest rate and a source of information about the index or formula; (2) an explanation of how the new interest rate and payment would be determined, including an explanation of how the index was adjusted, such as by the addition of a margin; (3) a good faith estimate based on accepted industry standards, of the creditor or servicer of the amount of the monthly payment that will apply after the date of the adjustment or reset, and the assumptions on which this estimate is based; (4) a list of alternatives consumers may pursue before the date of adjustment or reset, and descriptions of the actions consumers must take to pursue these alternatives, including – (A) refinancing, (B) renegotiation of loan terms, (C) payment forbearances and (D) pre-foreclosure sales; (5) the names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the

consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1441a-1 of Title 12); and (6) the address, telephone number, and Internet address for the State housing finance authority (as so defined) for the State in which the consumer resides.

42. 12 C.F.R. § 1026.20(c) requires that a creditor, assignee, or servicer of an adjustable-rate mortgage shall provide consumers with disclosures, as described in this paragraph (c), in connection with the adjustment of interest rates pursuant to the loan contract that results in a corresponding adjustment to the payment.

43. Section 1026.20(c)(1)(i) defines an adjustable rate mortgage as, "a closed-end consumer credit transaction secured by the consumer's principal dwelling in which the annual percentage rate may increase after consummation.

44. Plaintiff's property is her principal dwelling.

45. The Loan is an adjustable-rate mortgage.

46. Key Bank is both the creditor and servicer of the Loan. It failed to provide Plaintiff with notice before making changes to the principal and interest portions of her monthly payment obligations as further described herein. Key Bank's actions are a pattern and practice in conscious disregard of the rule of law and Plaintiff's rights as a borrower.

47. Key Bank's failure to provide notice caused Plaintiff severe emotional distress, including but not limited to confusion, an informational injury, and deprived her of the benefit of portions of her monthly payments made in excess of what was owed to pay down her principal.

**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

48. Plaintiff incorporates by reference and restates as though fully set forth herein all factual allegations within paragraphs 1 through 22.

49. To prove a cause of action under Washington's Consumer Protection Act ("CPA"), Plaintiff must prove five separate elements: (1) [an] unfair or deceptive act or practice; (2)

occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

50. Key Bank's business as a lender of mortgage loans and other consumer loans is carried out in commerce. Mortgage lending has been the subject of judicial scrutiny not just as result of the financial crisis of 2008, but also because it involves the consumer's largest investment in her or her lifetime and thus impacts an important public interest. The unfair and deceptive practices involved herein are as follows:

51. Key Bank's failure to apply mortgage payments made by the Plaintiff when they were received in violation of TILA;

52. Key Bank's failure to send Plaintiff's periodic statements and interest rate changes throughout the life of the Loan in violation of TILA;

53. Key Bank's failure to send Plaintiff's timely notices of the loan activities, including Key Bank's unilateral act of charging off a substantial amount from the principal due and owing in 2012, and then adding it back on in 2020, for no apparent reasons.

54. The unfair or deceptive aspect of the Washington Consumer Protection Act is determined on a case-by-case basis. Neither intent nor actual deception must be proven for an act or practice to be deemed unfair or deceptive. Rather, the court asks the question of whether the defendant's conduct has the capacity to deceive as substantial portion of the public. Given the facts alleged herein, it is undeniable that Key Bank's conduct has the capacity to deceive a substantial portion of the public.

55. Key Bank's conduct has caused financial injury to Plaintiff as they incurred time and resources to bring the accounting errors to Key Bank's attention. Key Bank's act of charging off approximately $21,731.58 from the loan principal in 2012, and adding it back in 2020, erode all equity earned by the Plaintiff during the same period of time. Key Bank's act also increased the amount that Plaintiff has to make each month and caused the Loan to be in serious delinquent status.

56. Key Bank's failure to account for seven payments made by Plaintiff caused the Loan to be in delinquency status and Plaintiff had to make up these seven payments in order to prevent her home from being foreclosed by Key Bank.

57. Key Bank's unfair and deceptive acts have caused Plaintiff to lose money in the form of payments she has made, the equity in her home, the time that she had to spend to inquire into the status of the Loan and to request Key Bank to take corrective action, and costs she has expended in the same process, including reasonable attorney's fees she is obligated to pay. Key Bank's unfair and deceptive acts also cause Plaintiff ongoing and severe emotional distress.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant Key Bank for the following:

1) For judgment that Key Bank violated RESPA and its regulations;

2) For judgment that Key Bank violated TILA and its regulations;

3) For judgment that Key Bank violated the Washington Consumer Protection Act;

4) For judgment that Key Bank has breached the Loan Contract and the implied duty of good faith and fair dealing;

5) For all resulting damages from Key Bank's violations of RESPA, TILA, including statutory damages, actual damages, and attorney fees and costs;

6) For recovery allowed under the WACPA, RCW 19.86.090, including treble damages and attorney fees and costs;

7) For pre-judgment interest on the above amounts as authorized by law;

8) For other relief as the Court deems just and equitable;

9) For leave to amend this complaint as needed and as required; and

Respectfully submitted this 24th day of February 2022.

BARRAZA LAW, PLLC

*/s/ V. Omar Barraza*
V. Omar Barraza, WSBA #43589
10728 16th Avenue SW
Seattle, Washington 98146
omar@barrazalaw.com
Tel.: (206) 933-7861
Fax.: (206) 933-7863